UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

SIROB IMPORTS, INC.,

                        Plaintiff,

    -against-

PEERLESS INSURANCE COMPANY,

                        Defendant.
_____

**ECF CASE**

**REPLY AFFIRMATION**

Civ. Action No.: 2:12cv05576

SCOTT D. STORM affirms the following under penalty of perjury:

1.     I am an attorney at law, duly licensed to practice in the United States District Court for the Eastern District of New York and a partner with Mura & Storm, PLLC, attorneys for the defendant, Peerless Insurance Company. As such, I am fully familiar with the facts and circumstances of this litigation.

2.     This affirmation is made and submitted in further support of Peerless Insurance Company's motion to dismiss the plaintiff's complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) and (6); 12(c); and/or 56 and is in reply to the plaintiff's opposition to the same.

I. **Plaintiff's Anticipatory Breach Argument**

3.     The plaintiff's primary opposition to Peerless' motion for summary judgment is that the subject suit is not premature because Peerless committed an anticipatory breach of the subject insurance policy. (Affirmation in Opposition, par. 3)

    a. **Peerless Did not Engage in Conduct that Was an "Anticipatory Breach"**

4. First, with respect to the alleged anticipatory breach, plaintiff's counsel sets forth numerous inaccurate facts in his affirmation and seemingly confuses Peerless' claim representative and Peerless' counsel with respect to Peerless' pre-litigation communication with the plaintiff. Plaintiff's counsel apparently, mistakenly, references these communications in an attempt to make it seem as though Peerless has been inconsistent with respect to its position in this matter.

5. Plaintiff's counsel first makes reference to a "June 11, 2012 e-mail from PEERLESS' counsel." (Affirmation in Opposition, par. 11) This e-mail is, of course, not from Peerless' counsel. It is from Jonathan Lawlee, a general adjuster for Liberty Mutual Insurance Company, parent company to Peerless Insurance Company. (See, Affidavit of Jonathan Lawlee)

6. The June 11, 2012 e-mail is in response to an e-mail and letter, dated June 8, 2012, from the plaintiff's public adjuster, Joseph Anton, requesting an extension of time for the repairs of the subject property. The letter references numerous problems with zoning and ordinances before requesting additional time to complete repairs. (Plaintiff's Exhibit E)

7. In response to this request, Mr. Lawlee obviously presumed that the plaintiff was requesting an extension of time to complete repairs under the Ordinance or Law section of the policy. Mr. Lawlee cited to that section of the policy, explicitly stated he would not extend the time to complete repairs, and stated that coverage could only apply if the repairs or replacement did not exceed two years. (Plaintiff's Exhibit E)

8. Plaintiff's counsel then sent a letter dated June 15, 2012 (Plaintiff's Exhibit F), which plaintiff's counsel, again, erroneously states was sent to "PEERLESS' counsel." This letter was sent to Mr. Lawlee. Mr. Lawlee then forwarded the letter to us and we provided the response letter dated July 12, 2012 (Plaintiff's Exhibit G).

9. In our July 12, 2012 letter, we merely attempted to explain to plaintiff's counsel that it made no difference whether the plaintiff was seeking coverage under the Ordinance or Law section of the policy or the Replacement Cost section of the policy, as the repairs or replacements needed to be completed as soon as reasonably possibly, but in any event, no more than two years after the date of the loss. (Plaintiff's Exhibit G)

10. Plaintiff's counsel goes to great lengths in his papers to make these communications seem inconsistent in some manner. Plaintiff's counsel makes reference to the July 12, 2012 letter (which I composed, not, as plaintiff mistakenly states, Jonathan Lawlee), to state that Peerless "apparently recognized that its earlier analysis was flawed." (Plaintiff's Affirmation, par. 13) Peerless "recognized" no such thing and nothing about the cited pre-litigation communications are inconsistent.

11. Mr. Lawlee, replying to a letter from a public adjuster, which made no specific reference to the policy, but did make various references to ordinances, laws and a request for an extension of time to complete repairs, presumed that the public adjuster was attempting to request an extension of time under the "Ordinance or Law" provision of the policy. Mr. Lawlee did nothing other than deny such an extension of time. (Plaintiff's Exhibit E)

MURA&STORM, PLLC • 930 RAND BUILDING • 14 LAFAYETTE SQUARE • BUFFALO, NEW YORK 14203
(716) 855-2800 • FAX (716) 855-2816

12. In response to the June 15, 2012 letter from plaintiff's counsel, we, as counsel for Peerless, then clarified that, regardless of the circumstances, repairs needed to be completed as soon as reasonably possible, but in no event, beyond the two-year anniversary of the date on which the direct physical loss or damage occurred. We explicitly stated that Peerless had reserved its right to make such determination upon the insured's timely submission of a claim for replacement cost coverage, once the repairs or replacement were complete. (Plaintiff's Exhibit G)

13. Plaintiff's counsel's assertion that Peerless "changed its theory after denying coverage on an entirely different theory" is misleading and baseless. (Affirmation in Opposition, par. 13) Neither Mr. Lawlee's e-mail nor our letter to plaintiff's counsel "denied coverage" at all. Mr. Lawlee's e-mail denied a request for further time to make repairs and our letter attempted to explain to plaintiff's counsel how Peerless interpreted various provisions of the subject policy. There was no denial, no theory of denial, and no inconsistency. Therefore, it is entirely unclear how these actions could have possibly amounted, as plaintiff's counsel suggests, to an "anticipatory breach of contract, relieving plaintiff of the obligation to rebuild prior to suit." (Affirmation in Opposition, par. 13)

14. Peerless did not engage in an "anticipatory breach" of the policy by merely stating its interpretation of the policy provisions at issue and that the plaintiff would need to comply with them. A dispute as to the meaning of certain provisions in a policy of insurance is not an "anticipatory breach" no matter what label the plaintiff puts on it. Further, as stated below, anticipatory repudiation cannot apply, as a matter of law, in the exact scenario that the plaintiff is attempting to argue that it applies.

### b. Anticipatory Repudiation Does Not Apply to Replacement Cost Claims

15. Regardless of the fact that Peerless clearly engaged in no conduct that could be considered anticipatory breach, anticipatory repudiation, by law in New York State, <u>cannot</u> apply to a claim for replacement cost coverage under a policy of property insurance.

16. In *DeLorenzo v. Bac Agency, Inc.*, 256 A.D.2d 906 (3d Dept. 1998), the plaintiff insured contended that the Supreme Court improperly denied her motion for leave to serve a second amended complaint containing an allegation of anticipatory repudiation. She asserted that "the insurer's refusal to pay full replacement cost beyond the policy limit constituted an anticipatory breach which excused her obligation to satisfy the condition precedent of replacement." *Id* at 907.

17. Here, the plaintiff states this same argument almost word-for-word: "PEERLESS has committed anticipatory breach of its insurance policy issued to SIROB, and therefore has excused the condition of reconstruction in order for SIROB to seek replacement cost coverage." (Affirmation in Opposition, par. 3)

18. In direct response to the above-quoted language from *DeLorenzo*, the Third Department stated, in no uncertain terms, "We disagree." *Id* at 907.

19. The Third Department then cited to the exact same New York anticipatory repudiation language that the plaintiff now relies on to make the same argument that the plaintiff in *DeLorenzo* unsuccessfully made. ("The doctrine of anticipatory repudiation entitles the nonrepudiating party to immediately claim damages for a breach of contract where there is a renunciation of the contract in which the

repudiating party has indicated an unqualified and clear refusal to perform with respect to the entire contract." *Id*. at 908.)

20. The court went on to state "[h]ere, the insurer did not refuse to perform and, in fact paid plaintiff $ 294,000 for her fire loss which was the face value of the policy… the insurer had no obligation to make replacement cost payments until plaintiff had actually undertaken replacement and incurred the cost." *Id.*, *citing*, *Harrington v. Amica Mut. Ins. Co.*, 223 A.D.2d 222 (4th Dept. 1996). The court finally stated that the "Plaintiff's contention that requiring fulfillment of the condition precedent constitutes a wrongful repudiation is clearly without merit." *Id.*, *citing*, *Lentini Bros. Moving & Storage Co. v. New York Property Ins. Underwriting Asso.*, 53 N.Y.2d 835 (1981).

21. Similar to the insurer in *DeLorenzo*, Peerless did not "refuse to perform" and certainly did not "refuse to perform with respect to the entire contract," which is the standard stated in the plaintiff's own case law on anticipatory breach. (Plaintiff's Memorandum of Law, p. 12) Peerless has paid the plaintiff $1,604,383.97 under the subject policy. To state that Peerless has "refused to perform with respect to the entire contract" is simply not true.

22. Further, similar to the insurer in *DeLorenzo*, Peerless has consistently taken the position that it has no obligation to consider replacement cost payments until the plaintiff has actually undertaken replacement and incurred the cost. This is precisely the position that we took in our July 12, 2012 letter to plaintiff's counsel (Plaintiff's Exhibit E) and precisely the reason this very Court dismissed the plaintiff's

complaint in *Exec. Plaza, LLC v. Peerless Ins. Co.*, 2010 U.S. Dist. LEXIS 99602 (E.D.N.Y. Feb. 8, 2010).

23. There is nothing distinguishing this matter from the clear precedent set forth in *DeLorenzo*, *supra*, and *Executive Plaza I*, *infra*. The plaintiff's anticipatory breach argument fails, as a matter of law.

### c. *Executive Plaza I* is Indistinguishable From This Suit

24. Despite the protestations of plaintiff's counsel in his Memorandum of Law, this case is *exactly* the same as the first *Executive Plaza* suit (*Executive Plaza I*) and to state that "the factual circumstances in the present case are completely inapposite" is simply false. (Plaintiff's Memorandum of Law, p. 12)

25. In *Executive Plaza I*, the plaintiff had brought suit within two years of the date on which the direct physical loss or damage occurred, but had not yet actually repaired or replaced the subject property, in what should be, a strikingly familiar set of circumstances.

26. Judge Wexler, in *Executive Plaza I*, stated: "it would be merely advisory for the court to render a decision as to whether Peerless has breached any obligation to pay replacement costs where any such costs have yet to be incurred. The failure to comply with the policy's clear and unambiguous condition precedent renders this claim unripe, and subject to dismissal." *Id.* at 10.

27. Plaintiff's counsel evidently confuses the first *Executive Plaza* suit with the second and that suit's subsequent appeal to the Second Circuit and referral to the Court of Appeals. (Despite the fact that plaintiff's counsel does recognize that we rely on the first suit, "which held that since repairs had not yet been completed, a suit for

replacement cost coverage under PEERLESS' policy was premature…" [Plaintiff's Memorandum of Law, p. 11])

28. There is nothing separating the present case from *Executive Plaza I*, which was not appealed from, and is settled case law in New York on the issues presented therein. The only potentially distinguishing factor is that, here, the plaintiff has made an anticipatory breach argument, which was not addressed in *Executive Plaza I*. However, as stated above, that issue is directly addressed by *DeLorenzo v. Bac Agency, Inc.*, 256 A.D.2d 906 (3d Dept. 1998) and the court there expressly dismissed such an argument.

29. Both *DeLorenzo* and *Executive Plaza I* rely on *Harrington v. Amica Mut. Ins. Co.*, 223 A.D.2d 222 (4th Dept. 1996) to arrive at the actual crux of this matter. *Harrington* explicitly stated that "Replacement cost coverage inherently requires a replacement (a substitute structure for the insured) and costs (expenses incurred by the insured in obtaining the replacement); without them, the replacement cost provision becomes a mere wager." *Id*. at 228.

30. Based on this principle, as clearly stated by this Court in *Executive Plaza I*, "In the absence of actual replacement, there can be no ripe claim for replacement cost coverage." *Exec. Plaza,* 2010 U.S. Dist. LEXIS 99602 at 10-11.

31. The only issue that need be considered at this point is whether the plaintiff is, at this time, entitled to replacement cost coverage under the subject policy. It is undisputed that in order to be entitled to replacement cost coverage under New York law, an insured must actually repair or replace the property at issue. It is further undisputed that the plaintiff in this matter has not actually repaired or replaced the

- 8 -

Mura&Storm, PLLC • 930 Rand Building • 14 Lafayette Square • Buffalo, New York 14203
(716) 855-2800 • fax (716) 855-2816

property at issue nor proved that it has actually incurred the $2,288,248.14 that it seeks in this suit to effect such repairs or replacements. The analysis need go no further than this.

32. The logic of the need to dismiss such suits is underlined by Judge Wexler in the exact same scenario:

> "The matters raised by [the plaintiff] may, at some point in the future present a controversy. That controversy, however, is not yet raised. This is because these matters cannot be in dispute unless and until [the plaintiff] complies with the Policy prerequisites for seeking the depreciation holdback. Once repairs are complete, [the plaintiff] can make its claim for full payment of the Policy. Peerless can then either make payment, or raise the issues of reasonableness and timeliness in support of a decision of non-payment. At that point, there will be a real controversy for the court to decide. That controversy does not, however, exist at this juncture."

*Exec. Plaza,* 2010 U.S. Dist. LEXIS 99602 at 12.

33. There is simply no controversy here. The plaintiff has brought a suit for nothing other than $2,288,248.14 in damages. (See, pp. 19 and 21 to Exhibit A of Mr. Lawlee's Affidavit) However, it is undisputed that the plaintiff has not yet engaged in the repairs and replacements comprising this amount.

34. In fact, it is entirely possible that the plaintiff will *never* engage in the repairs and replacements comprising this amount. If Peerless' motion to dismiss were to be denied, how would this matter proceed? To be held in abeyance indefinitely while the parties and the court wait to find out whether the repairs or replacements ever do occur, and at that point, resume litigation and return to the issues of policy interpretation and the reasonableness of the replacement? Surely, the handling of litigation in such a hypothetical manner has never been anticipated in New York or

Federal law, which is precisely why such suits are dismissed as premature in the exact fashion that Judge Wexler dismissed the first *Executive Plaza* suit.

35. There is no question that plaintiff's suit is in the exact same posture as the first *Executive Plaza* suit and that it should be dismissed as a matter of law as it is premature and unripe for adjudication.

## II. Interpretation of Policy Provisions

36. As the subject suit is indisputably in the posture of the first *Executive Plaza* suit, and is subject to summary dismissal as it is premature, we need not go any further in discussing the plaintiff's disagreement with Peerless regarding the interpretation of the subject policy.

37. The plaintiff's statement that "PEERLESS no longer relies upon the theory… to the effect that the policy requires that in addition to rebuilding as soon as possible, that the rebuilding must be completed in any event within two years" and that this "effectively concedes the point" is completely misguided. (Plaintiff's Memorandum of Law, p. 15) Peerless has not conceded anything with respect to this point. It was merely unnecessary to raise this point in Peerless' motion for summary judgment because it is a matter of contract interpretation, which we need not even reach because the plaintiff's suit is premature as fully explained above.

38. Peerless has moved for summary judgment on a limited basis: that the plaintiff's suit should be dismissed as premature because the plaintiff has not repaired or replaced the subject property for which it is seeking damages in this suit. Peerless has pointed to two sections of the subject policy supporting dismissal on this basis: 1) the replacement cost provision, which requires repair or replacement prior to

making a claim for replacement cost coverage (see, Attorney Affirmation, par. 2.A); and 2) the suit against us provision, which requires all terms (including repair or replacement) to be complied with prior to bringing suit. (see, Attorney Affirmation, par. 2.B)

39. At no point has Peerless raised any issue relating to the interpretation of the subject policy relating to the time by which the plaintiff must repair or replace the subject property. The plaintiff's numerous references to this issue throughout its Affirmation and Memorandum of Law (all those referring to the second *Executive Plaza* suit) are irrelevant.

40. The plaintiff's entire "POINT II", "POINT III" and "POINT IV" of its Memorandum of Law are further irrelevant to this motion and should not even be considered at this juncture. These issues are not before this Court on this motion and the plaintiff cannot raise these issues in its opposition papers.

41. Plaintiff's Exhibit A to its Memorandum of Law, the Second Circuit decision referring the second *Executive Plaza* suit to the Court of Appeals is similarly irrelevant to this motion. The "interplay between two provisions in the fire insurance policy" that are contemplated in that suit, and that plaintiff seems eager to contemplate on this motion, are not yet at issue here.

42. If, in the event that this suit is summarily dismissed and the plaintiff does, indeed, repair or replace the subject property, it may very well find itself in a similar position to the plaintiff in *Executive Plaza II* and that decision, and the numerous arguments the plaintiff makes in its Points II, III, and IV may someday become relevant. However, that time is not now.

- 12 -

43. As such, Peerless request that the Court not consider the majority of the plaintiff's opposition papers as the issues contained therein are not relevant to the motion at hand. Peerless is moving for summary judgment solely on the basis that the plaintiff's suit is premature because the plaintiff has not repaired or replaced the subject property. Any additional issues that the plaintiff has anticipated and argued here are not properly before this Court at this time.

## CONCLUSION

44. Based upon the above, Peerless Insurance Company respectfully requests that this Court issue an order granting its motion dismissing the complaint.

DATED: Buffalo, New York
June 12, 2013

Respectfully submitted,

s/Scott D. Storm, Esq.

MURA & STORM, PLLC
*Attorneys for Defendant*
930 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 855-2800
scott.storm@muralaw.com